**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*French*, 18-cv-1218<br>*Bures*, 25-cv-1864<br>*Stahlnecker*, 25-cv-1869 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M") move for judgment on the pleadings in three cases for failure to state claim upon which relief can be granted. The claims brought in these cases are time-barred under the applicable Nebraska statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations

grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the MDL of meritless cases by identifying and dismissing claims that are time-barred on their face.

Second, Plaintiffs' claims are barred by the applicable Nebraska statutes of limitation. For claims that are subject to the discovery rule, the limitations period begins to run when a plaintiff discovers or should discover their cause of action. *E.g.*, *Konecne v. Abram, LLC*, 26 N.W.3d 44, 64 (Neb. 2025). Applying similar discovery rules, this Court recently granted summary judgment in cases that are time-barred under Iowa and Louisiana law, finding that a plaintiff is on inquiry notice of potential claims against 3M upon diagnosis of an infection. *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Here, as demonstrated below, applying this finding allows the Parties and the Court to easily identify and take appropriate action on Nebraska-based cases that are untimely on their face, given the time that has elapsed since the Plaintiffs' diagnoses. Taking these steps now, on a sampling of Nebraska cases, would be an important first step in culling the inflated

inventory of existing cases, and it would enable the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

---

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and no Plaintiff has previously argued that such motion practice would be barred by PTO 22's motion deadline.

## BACKGROUND

On or about May 17, 2010, Plaintiff Betty French ("French") underwent a surgery in Nebraska. During the surgery, a Bair Hugger patient warming system ("Bair Hugger system") was used. (Ex. B, French Compl. ¶¶ 2, 7.) French subsequently developed a periprosthetic joint infection ("PJI"), which she attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, French alleges that she underwent multiple additional procedures between May 2011 and September 2012. (*Id.* ¶ 9.) On May 2, 2018, approximately seven years after first being treated for an infection, French commenced this action against 3M by direct filing her Complaint in this MDL. (*See generally*, Ex. B, French Compl.) In the Complaint, French designated the District of Nebraska as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about December 3, 2019, Plaintiff Terrance Bures underwent a surgery in Nebraska. (Ex. C, Bures Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used. (*Id.* ¶ 7.) Bures subsequently developed a PJI, which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Bures alleges that he underwent "numerous" additional procedures, the first of which occurred on February 27, 2020. (*Id.* ¶ 9.) On April 30, 2025, more than five years after first being treated for an infection, Bures

commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally* Ex. C, Bures Compl.) In the Complaint, Bures designated the District of Nebraska as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about November 27, 2018, Plaintiff Steven Stahlnecker ("Stahlnecker") underwent a surgery in Nebraska. During the surgery, a Bair Hugger system was used. (Ex. D, Stahlnecker Compl. ¶¶ 2, 7.) Stahlnecker subsequently developed a PJI, which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Stahlnecker alleges that he underwent "numerous procedures" on or about December 8, 2018. (*Id.* ¶ 9.) On April 30, 2025, more than six years after first being treated for an infection, Stahlnecker and his wife (collectively, the "Stahlneckers") commenced this action against 3M by direct filing their Complaint in this MDL. (*See generally*, Ex. D, Stahlnecker Compl.) In the Complaint, the Stahlneckers designated the District of Nebraska as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

**Chart Summarizing the Relevant Details of Plaintiffs' Cases**

| Plaintiff | French | Bures | Stahlnecker |
|---|---|---|---|
| **Case Number** | 18-cv-1218 | 25-cv-1864 | 25-cv-1869 |
| **Plaintiff's Home State** | Nebraska | Nebraska | Nebraska |
| **Designated Jurisdiction** | D. Neb. | D. Neb. | D. Neb. |
| **Location of Index Surgery** | Good Samaritan Hospital, Kearney, NE | Syracuse Area Health, Syracuse, NE | St. Francis Medical Center, Grand Island, NE |
| **Date of Index Surgery** | May 17, 2010 | December 3, 2019 | November 27, 2018 |
| **Date of Injury** | May 31, 2011[2] | February 27, 2020 | December 8, 2018 |
| **Filing Date** | May 2, 2018 | April 30, 2025 | April 30, 2025 |
| **Time Between Surgery and Filing Date** | 7 years, 11 months, 16 days | 5 years, 4 months, 28 days | 6 years, 5 months, 4 days |
| **Time Between Injury and Filing Date** | 6 years, 11 months, 3 days | 5 years, 2 months, 4 days | 6 years, 4 months, 23 days |

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Under this standard, the Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor."

---

[2] Because French alleges that her first treatment began in May 2011, the last day of that month is used. (*See* Ex. B, French Compl. ¶ 9.)

*Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred under Alabama law); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. Nebraska Law Applies.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were direct-filed in the MDL, and have

identified the District of Nebraska as their appropriate venues. (*See* Ex. B, French Compl. ¶ 5; Ex. C, Bures Compl. ¶ 5; Ex. D, Stahlnecker Compl. ¶ 5.) As a federal district court sitting in diversity, the District of Nebraska would apply Nebraska choice-of-law rules with respect to issues of state law. *See, e.g.*, *Dubas v. Clark Equip. Co.*, 532 F. Supp. 3d 819, 830 (D. Neb. 2021) ("In a diversity case, the Court applies the choice-of-law rules of the forum state—in this case, Nebraska.") (citing *Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 475 (8th Cir. 2012)). Therefore, Nebraska's choice-of-law rules dictate this Court's analysis.[3]

In tort cases, Nebraska courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws to resolve choice-of-law questions. *E.g.*, *Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 772-73 (Neb. 2009). That test requires the a court to consider "which state has the most significant relationship to the parties and the occurrence" by weighing the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the

---

[3] To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the Nebraska statute of limitations would still apply because Nebraska substantive law applies. *See* Minn. Stat. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

relationship, if any, is centered. *Id.* at 773. The "general rule" for personal injury actions is that the law of the state where the injury occurred applies, unless some other state has a more significant relationship with the dispute. *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 459 (Neb. 2017).

Here, the factors favor applying Nebraska law. Plaintiffs are residents and citizens of Nebraska. (Ex. B, French Compl. ¶ 2; Ex. C, Bures Compl. ¶ 2; Ex. D, Stahlnecker Compl. ¶ 2.) Their alleged injuries occurred in Nebraska, where a Bair Hugger was used during their surgeries and where they resided when they developed infections. (Ex. B, French Compl. ¶¶ 7-9; Ex. C, Bures Compl. ¶¶ 7-9; Ex. D, Stahlnecker Compl. ¶¶ 7-9.) The relationship between the parties—to the extent there is one—is centered in Nebraska because that is where Plaintiffs used the Bair Hugger system. *See, e.g.*, *Kammerer v. Wyeth*, No. 8:04CV196, 2011 WL 5237754, at *5 (D. Neb. Nov. 1, 2011) (considering that "the relationship between plaintiffs and [defendant] arose from the plaintiff's purchase and use of the defendants' product in Nebraska"). These factors all weigh in favor of applying Nebraska law.

Some of the conduct causing the alleged injury arguably could have occurred in Minnesota, where Defendants are headquartered. *See O'Brien*, 903 N.W.2d at 460 (considering that "important decisions" about manufacturing were made in the state where defendant was headquartered). However, this minimal contact with Minnesota is insufficient to justify deviation from the

general rule that the law of the place of injury should apply. *See id.* (affirming conclusion that Nebraska law applied where the injury took place in Nebraska, plaintiffs were Nebraska residents, the product at issue was used and allegedly failed in Nebraska, and plaintiff was treated for injuries in Nebraska).

## II. Plaintiffs' Personal Injury Claims are Barred by the Applicable Statute of Limitations.

Product liability actions under Nebraska law "shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs." Neb. Rev. Stat. Ann. § 25-224(1). This statute of limitations "begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage." *Condon v. A. H. Robins Co.*, 349 N.W.2d 622, 627 (Neb. 1984).

Similarly, any "action for an injury to the rights of the plaintiff" must be brought within four years. Neb. Rev. Stat. Ann. § 25-207(3). This statute of limitations applies to negligence and personal injury claims based in tort, including ordinary negligence, negligent misrepresentation, and negligent infliction of emotional distress. *See, e.g.*, *Susman v. Kearney Towing & Repair Ctr., Inc.*, 970 N.W.2d 82, 89-90 (Neb. 2022) (negligence); *Keith v. Data Enters., Inc.*, 925 N.W.2d 723, 732 (Neb. 2019) (negligent misrepresentation); *Fry v. Doane Univ.*, No. 4:18CV3145, 2019 WL 6728259, at *4 (D. Neb. Dec. 11, 2019)

(negligent infliction of emotional distress). It has also been applied to claims for unjust enrichment. *See Fagan v. Lasher*, No. A-23-294, 2024 WL 4274325, at *3 (Neb. Ct. App. Sept. 24, 2024), *review denied* (Dec. 23, 2024).[4]

The general rule is that "a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs." *Shlien v. Bd. of Regents, Univ. of Nebraska*, 640 N.W.2d 643, 650 (Neb. 2002). However, the Nebraska Supreme Court has determined "that the discovery rule applies in certain categories of cases" where "the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage." *Id.* (emphasis omitted). The Court recently described the discovery rule as follows:

> When the discovery rule is applicable, the running of the statute of limitations is tolled until the discovery of the cause of action. Discovery of a cause of action occurs when there is knowledge of facts constituting the basis of the cause of action or awareness of the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which, if pursued, would lead to the discovery of the cause of action. The cause of action in any case embraces not only the injury which the complaining party has received, but it includes more. All the facts which, taken together, are necessary to fix the responsibility are parts of the cause of action.

---

[4] Courts have also applied the catch-all four-year statute of limitations found in Neb. Rev. Stat. § 25-212 to unjust enrichment claims. *See, e.g.*, *Schmidt v. Sportsman's Gallery, LLC*, No. A-21-008, 2022 WL 29478, at *9 (Neb. Ct. App. Jan. 4, 2022). Regardless of which statute applies, the result is the same.

*Konecne v. Abram, LLC*, 26 N.W.3d 44, 64 (Neb. 2025) (internal quotations and footnotes omitted).

Plaintiffs' claims for strict products liability, negligence, negligent misrepresentation, gross negligence, negligent infliction of emotional distress, and unjust enrichment are barred. Even assuming the discovery rule applies to each of these claims, the four-year statutes of limitations began to run, at the latest, on the dates when Plaintiffs were first treated for their PJIs. As of those dates, Plaintiffs were aware of the existence of their injuries and could have learned, through the exercise of reasonable diligence, of all the facts necessary for their cause of action, including whether a Bair Hugger system was used during their index surgeries. As this Court has previously recognized, "[a]t any time after [being] diagnosed with a [PJI], [Plaintiffs] could have requested and reviewed [their] medical records, and [they] could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers." *Skinner,* No. 17-2149, ECF 98 at 6-7.

In *Skinner*, this Court determined that the Plaintiff's claims were time-barred under Iowa law, which applies a discovery rule under which the statute of limitations begins to run on the date a plaintiff discovers, or with reasonable diligence should discover, the existence of their injury. *Id* (citing *Rivas v. Brownell*, 18 N.W.3d 211, 221 (Iowa 2025)). The Court reached the same conclusion in two cases under Louisiana law, under which the discovery rule

requires not only the discovery of an injury but also a reasonable basis to pursue a claim against a specific defendant. *Jones*, No. 23-1425, ECF 103; *Pelican*, No. 23-1818, ECF 136 at 7-8 (citing, *inter alia*, *Bruno v. Biomet, Inc.*, 74 F.4th 620, 624 (5th Cir. 2023)).

Here, where the discovery rule requires discovery of the facts giving rise to the cause of action, the same analysis applies. Upon being diagnosed with a PJI, Plaintiffs could have requested their medical records, learned that a Bair Hugger system was used during their surgeries, and obtained medical and legal assistance to discover their causes of action. *See Skinner v. 3M*, No. 17-2149, ECF 98 at 6-7. No amount of fact discovery will change the basic premise already found by the Court that a person exercising reasonable diligence could and would have taken these actions. And because Plaintiffs' symptoms and diagnoses of a PJI must have manifested before they began receiving treatment, the treatment dates alleged in Plaintiffs' complaints are the latest dates upon which the statute of limitations could have begun to run.

French underwent her index surgery on May 17, 2010, and underwent her first revision procedure in May 2011. (Ex. B, French Compl. ¶¶ 7-9.) She did not file her lawsuit until May 2, 2018, long after the four-year limitations period had expired. Similarly, Bures underwent his index surgery on December 9, 2019, and underwent his first revision procedure on February 27, 2020, but did not file his lawsuit until April 30, 2025. (Ex. C, Bures Compl. ¶¶ 7-9.)

Finally, Stahlnecker's index surgery took place on November 27, 2018, the first of his alleged revision procedures took place on December 8, 2018, and the Stahlneckers did not file their lawsuit until April 30, 2025. (Ex. D, Stahlnecker Compl. ¶¶ 7-9.) Because more than four years passed between the first dates on which Plaintiffs were treated for their PJIs and the dates on which they filed their lawsuits, their product liability and personal injury claims are untimely.

## III. Plaintiffs' Fraud-Based Claims are Barred by the Applicable Statute of Limitations.

Under Nebraska law, "an action for relief on the ground of fraud" shall be brought within four years, "but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." Neb. Rev. Stat. Ann. § 25-207(4). "An action for fraud does not accrue until there has been a discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery." *Chafin v. Wisconsin Province of Soc'y of Jesus*, 917 N.W.2d 821, 824 (Neb. 2018) (footnote omitted). "Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court." *Id.* (footnote omitted).

The same discovery rule analysis that applies to Plaintiffs' product liability and personal injury claims also applies to their claims sounding in fraud. *See Konecne*, 26 N.W.3d at 64 (observing that although different types of claims are subject to discovery rules grounded in different statutes or precedents, "the differences between the various discovery rules [are] slight"). Accordingly, Plaintiffs' claims for fraudulent misrepresentation, common law fraud, and constructive fraud are untimely as a matter of law.

## IV. Plaintiffs' Breach of Warranty Claims are Barred by the Applicable Statute of Limitations.

Claims for breach of warranty are subject to Neb. Rev. Stat. § UCC § 2-725(1), which provides that "any action must be commenced within four years after the cause of action has accrued." *See Murphy v. Spelts-Schultz Lumber Co. of Grand Island*, 240 Neb. 275, 285, 481 N.W.2d 422, 430 (1992). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and a "breach of warranty occurs when tender of delivery is made." Neb. Rev. Stat. Ann. § UCC § 2-725(1). In other words, breach of warranty claims are not subject to the discovery rule.

Here, Plaintiffs breach of warranty claims accrued on the date of their index surgeries, which is the latest possible date of delivery of the allegedly defective Bair Hugger systems used during those surgeries. Because Plaintiffs

did not file their lawsuits within four years of their index surgeries, and potential breach of warranty claims are untimely.

## V. Nebraska Statutory Claims Are Barred by the Applicable Statute of Limitations.

With respect to their causes of action for "Consumer Fraud and/or Unfair and Deceptive Trade Practices," French asserts a claim under the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1601 *et seq.*, (Ex. B, French Compl. ¶ 12), but Bures and the Stahlneckers do not specify whether they assert claims under that same statute or under the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. § 87-301 *et seq.*, (See Ex. C, Bures Compl. ¶ 12; Ex. D, Stahlnecker Compl. ¶ 12). Regardless, the statute of limitations analysis is the same.

Actions under the NCPA must be brought "within four years after the cause of action accrues." Neb. Rev. Stat. § 59-1612. The cause of action accrues at the time of the relevant transaction. *See Siegel v. Deutsche Bank Nat. Tr. Co.*, No. 8:08CV517, 2009 WL 3254491, at *3 (D. Neb. Oct. 8, 2009), aff'd, 409 F. App'x 975 (8th Cir. 2011). Similarly, "[a] civil action arising under the [NUDTPA] may be brought only within four years from the date of the purchase of goods or services." Neb. Rev. Stat. § 87-303.10.

Here, the relevant transactions involving the purchase of the Bair Hugger systems used in Plaintiffs' surgeries occurred, at the latest, on the date

of their index surgeries. Because Plaintiffs' lawsuits were not filed within four years of their index surgeries, their claims under both the NCPA and NUDTPA are time-barred.

## VI. Minnesota Statutory Consumer Protection Claims Fail Because Plaintiffs Were Not Injured in Minnesota

Plaintiffs assert claims under the Minnesota Prevention of Consumer Fraud Act, Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, and Minnesota False Advertising Act (collectively, "Minnesota Consumer Protection Statutes"). The Minnesota claims fail as a matter of law because Plaintiffs were not injured in Minnesota.

There is a "general presumption" under Minnesota law that "Minnesota statutes do not apply extraterritorially," and that presumption cannot be overcome unless the Minnesota Legislature "explicitly state[s] that it intends for a law to have extraterritorial effect." *Hull v. ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 691 (D. Minn. 2021). There is no such explicit statement in the Minnesota Consumer Protection Statutes. Accordingly, courts have not applied these statutes extraterritorially to plaintiffs who reside and were injured outside of Minnesota. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (determining there is no legal support for applying Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota

consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), *aff'd*, 9 F.4th 981 (8th Cir. 2021).

Because Plaintiffs allege they were injured in Nebraska and not Minnesota, Plaintiffs cannot bring claims under the Minnesota Consumer Protection Statutes. These claims fail as a matter of law. *See Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29, at *11-13 (D. Minn. Jan. 7, 2019) (agreeing with 3M and dismissing the Minnesota consumer protection claims where plaintiff's injury occurred outside of Minnesota).

## VII. Fraudulent Concealment Does Not Save Plaintiffs' Untimely Claims.

A plaintiff must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); *Chafin*, 917 N.W.2d at 824–25 ("In order to survive a motion to dismiss, a complaint alleging

fraudulent concealment must plead with particularity how material facts were concealed to prevent the plaintiff from discovering the misconduct and how, through due diligence, the plaintiff failed to discover his or her injury.”).

Substantively, to successfully invoke the doctrine of fraudulent concealment and estop the defendant from asserting a statute of limitations defense, “the plaintiff must show the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the misconduct.” *Chafin*, 917 N.W.2d at 824 (footnote omitted). This requires showing “active or affirmative efforts to conceal” the wrongdoing. *Schendt v. Dewey*, 568 N.W.2d 210, 213 (Neb. 1997); *see also Andres v. McNeil Co.*, 707 N.W.2d 777, 787 (Neb. 2005) (“[G]enerally, for fraudulent concealment to estop the running of the statute of limitations, the concealment must be manifested by an affirmative act or misrepresentation.”).

The plaintiff must also demonstrate “that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired.” *Chafin*, 917 N.W.2d at 825. A plaintiff cannot rely on fraudulent concealment where he or she “ha[s] in fact discovered information that would, as a matter of law, reasonably have led to knowledge of the facts giving rise to the [plaintiff’s] cause of action.” *Gering-Fort Laramie Irr. Dist. v. Baker*, 612 N.W.2d 897, 904 (Neb. 2000); *see also Mandolfo v. Mandolfo*, 796 N.W.2d 603,

612 (Neb. 2011) (rejecting fraudulent concealment argument where plaintiff "knew facts that could have reasonably led to the discovery of his cause of action"). Finally, a plaintiff must file their lawsuit "within a reasonable time after discovery of the fraudulent concealment." *Schendt*, 520 N.W.2d at 548; *Luther v. Sohl*, 181 N.W.2d 268, 270 (Neb. 1970) ("Judicial decisions almost uniformly support the proposition that if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel.").

Here, Plaintiffs do not even attempt to plead the elements of fraudulent concealment, let alone do so with the requisite particularity. Although they each checked "fraudulent concealment" as a theory of liability in their respective Complaints, they do not allege any facts demonstrating that 3M made any active or affirmative efforts to conceal any material facts from Plaintiffs *themselves*, or explain how or why Plaintiffs were prevented from discovering 3M's alleged misconduct or their causes of action. *See Chafin*, 917 N.W.2d at 824-25; *Schendt*, 568 N.W.2d at 213; *Andres*, 707 N.W.2d at 787. They further do not allege when or how they discovered 3M's alleged fraud, or that they filed their lawsuits within a reasonable time after any such discovery. *Summerhill*, 637 F.3d at 880; *Schendt*, 520 N.W.2d at 548; *Luther*, 181 N.W.2d at 270. These allegations are also not contained in the Master Long Form Complaint, which contains general allegations but none specific to Plaintiffs or

their own circumstances. (*See generally* Master Long Form Complaint, MDL ECF 97.)

In addition, Plaintiffs have not pled and cannot demonstrate that they exercised due diligence to discover their causes of action before the limitations period expired. *Chafin*, 917 N.W.2d at 825. This Court has already determined that a reasonably diligent Bair Hugger plaintiff could investigate and discover their claims at the time they are diagnosed with a PJI. *See Skinner*, No. 17-2149, ECF 98 at 6-7; *Jones*, No. 23-1425, ECF 103 at 8; *Pelican*, No. 23-1818, ECF 136 at 7-8. Plaintiffs do not allege that they did so, nor do they explain why they did not.

Third, even were the statute of limitations tolled, any tolling would end when the Bair Hugger MDL was formed on December 11, 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger have been readily available in the public domain, ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. (*See generally*, Transfer Order, MDL ECF 1.) *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025).

Bures and Stahlnecker both underwent their index surgeries and subsequent treatment long after this MDL was already in full swing. (*See* Ex. C, Bures Compl. ¶¶ 7, 9 (index surgery December 3, 2019, and first treatment February 27, 2020); Ex. D., Stahlnecker Compl. ¶¶ 7, 9 (index surgery November 27, 2018, and first treatment December 8, 2018).) By the time their injuries occurred, 3M would have lost any ability to fraudulently conceal their claims due to public knowledge of this MDL that had been ongoing for years. Fraudulent concealment therefore could not have operated to toll Bures' or the Stahlneckers' claims at all, and their lawsuits are untimely.

## VIII. Plaintiffs' "Cause of Action" for Punitive Damages Fails Because Their Underlying Claims Fail

Bures and the Stahlneckers each list punitive damages as an additional "cause of action." (*See* Ex. C, Bures Compl. ¶ 12; Ex. D, Stahlnecker Compl. ¶ 12). But there is no independent cause of action for punitive damages, and because Plaintiffs' other claims must be dismissed, their requests for punitive damages also fail. *See, e.g.*, *Brown v. Reg'l W. Med. Ctr.*, 916 N.W.2d 590, 598 (Neb. 2018) ("Given our conclusions above that the district court did not err in dismissing her substantive claims, it follows that she was not entitled to punitive damages.").

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are all untimely and fail for other reasons as a matter of law, and should therefore be dismissed with prejudice.

Respectfully submitted,

Date: December 15, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***