**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br>*French*, 18-cv-1218<br>*Bures*, 25-cv-1864<br>*Stahlnecker*, 25-cv-1869 | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiff Terrance Bures did not respond to the Motion for Judgment on the Pleadings ("MJOP") filed by Defendants 3M Company and Arizant Healthcare Inc. (together, "3M"). Plaintiffs Betty French and Steven Stahlnecker responded to 3M's motion, and do not dispute that their lawsuits were filed outside of the applicable Nebraska statute of limitations. They argue only that the doctrine of fraudulent concealment tolls the limitations period and saves their claims.

Recognizing that the Master Complaint and their Short Form Complaints do not adequately plead fraudulent concealment, they request permission to amend their individual complaints to add specific factual allegations to satisfy the pleading standard. Both French and Stahlnecker

have filed a Proposed Amended Complaint ("PAC") along with their respective Motions to Amend.

The PACs demonstrate that amendment would be futile for two reasons. First, the PACs fail to plausibly plead fraudulent concealment, much less with the particularity required by Federal Rule of Civil Procedure 9(b). Second, even if that were not so, this Court has previously concluded that accrual of the statute of limitation is tolled only until the onset of infection, at which time a plaintiff is on inquiry notice to discover their claims.[1] Because the PACs allege that French and Stahlnecker were diagnosed with infections seven and six years before filing suit, respectively, their claims are untimely as a matter of law, and amendment is futile.

Accordingly, 3M's MJOP should be granted, and French and Stahlnecker's individual Motions for Leave to Amend, (French, 18-cv-1218 Dkt. 18; Stahlnecker, 25-cv-1869 Dkt. 14) should be denied.

## ARGUMENT

### I. Bures's Failure to Respond to the MJOP Effectively Waives Any Opposition.

Bures did not respond to the MJOP or seek an extension of time to file a response. "A litigant's complete failure to respond to an opposing party's

---

[1] *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

argument is often construed as a waiver" of any opposition to the argument, which alone can be grounds for dismissal. *Doll v. Trellis Walnut Towers LLC*, No. 24-CV-136 (ECT/TNL), 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) (collecting cases); *see also Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) ("Plaintiff's failure to respond amounts to a waiver, and on that basis alone, defendants' motion to dismiss should be granted."). Accordingly, the Court should grant the MJOP as to Bures.

## II. 3M's MJOP Is Neither Procedurally Improper Nor Premature.

Plaintiffs' assertion that 3M's MJOP is an "attempt to circumvent" PTO 1, PTO 4, PTO 8, and PTO 22 is unavailing. (*See* French's Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3310, hereinafter "French Opposition" or "French Opp." at 3-5; Stahlnecker's Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3317, hereinafter "Stahlnecker Opposition" or "Stahlnecker Opp." at 3-5). While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. PTOs 4 and 8 have no relevance here. PTO 4 set a schedule of deadlines for pleadings and dispositive motions in 2016, before Plaintiffs' cases were even filed. PTO 8 refers back to those deadlines as they relate to any Rule 12(b)(6) motions directed at the master pleadings. Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary

judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, until 3M began filing Rule 12(c) motions directed at facially untimely claims, no Plaintiffs had previously advocated for an interpretation of PTO 22 that precludes all dispositive motion practice, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875 (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, their cases "ha[ve] no scheduling order" (French Opp. at 5; Stahlnecker Opp. at 5), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1.) The good cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329

F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferee courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

Equally unpersuasive are Plaintiffs' arguments that the Master Complaint and Short Form Complaints are merely "administrative devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery, and therefore Plaintiffs French and Stahlnecker should have the same opportunities. (*See* French Opp. at 4-6; Stahlnecker Opp. at 4-6). By filing their Motions to Amend and PACs, French and Stahlnecker have nullified any argument that adjudicating the MJOP unfairly deprives them of an opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

Lastly, Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will open the "floodgates" for additional motion practice (French Opp. at 6; Stahlnecker Opp. at 6)—just reinforces the need for 3M's MJOP. Plaintiffs in this MDL have elected to file hundreds (if not thousands) of cases that are facially time-barred, and Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and 3M. Judicial efficiency is best supported by litigants voluntarily dismissing cases that are facially time-barred (or, even better, never filing them in the first place).

If Plaintiffs in this litigation will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave 3M with little choice but to file these motions.

## III. Plaintiffs Should Be Denied Leave to Amend Because Their Proposed Amendments Are Futile.

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court

may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Plaintiffs argue that 3M "cannot argue futility" the PACs "contain[] many more facts and details than the Master Complaint in the MDL which the Defendants never once asserted was deficient." (*See* Memoranda in Support of Motions to Amend, French Dkt. 19 at 8; Stahlnecker Dkt. 15 at 8.) But that argument misses the point. Futility must be determined based on the sufficiency of the allegations in the PACs and is not dependent upon whether 3M previously challenged the Master Complaint. Here, the PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations in these specific cases; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date they were diagnosed with an infection. Because the PACs plead that French and Stahlnecker were diagnosed with

infections seven and six years before filing suit, respectively, their proposed amendments are futile.[2]

### A. Plaintiffs Fail To Adequately Plead Fraudulent Concealment.

A plaintiff seeking to toll the statute of limitations based on fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. Fed. R. Civ. P. 9(b); *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Summerhill*, 637 F.3d at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

Under Nebraska law, the burden on a plaintiff seeking to avoid a statute of limitations defense based on fraudulent concealment is high. The plaintiff must plead facts demonstrating "how material facts were concealed to prevent the plaintiff from discovering the [alleged] misconduct and how, through due

[2] Plaintiffs do not dispute that their personal injury and fraud-based claims are subject to a four-year statute of limitations, or that their breach of warranty and consumer protection claims are governed by four-year statutes of limitations not subject to the discovery rule.

diligence, the plaintiff failed to discover his or her injury." *Chafin v. Wisconsin Province of Soc'y of Jesus*, 301 Neb. 94, 100, 917 N.W.2d 821, 825 (2018); *see also Konecne v. Abram, LLC*, 319 Neb. 966, 998, 26 N.W.3d 44, 68 (2025).

Plaintiffs' PACs fall short of these standards. As an initial matter, the PACs do not contain any allegations addressing when or how Plaintiffs purportedly discovered 3M's alleged fraud. Stahlnecker's PAC contains general allegations about how he allegedly discovered that a Bair Hugger system was used in his surgery, but he provides no detail about how he allegedly discovered that 3M had engaged in purportedly fraudulent conduct. (*See* Stahlnecker PAC ¶ 40 ("It was not until after the statute of limitations had run that Plaintiff first learned the Bair Hugger was capable of causing an infection[.] . . . Upon learning this, Plaintiff promptly retained counsel, who obtained the medical records confirming the Bair Hugger was used in Plaintiff's joint replacement surgery.").) French's PAC does not contain any allegations whatsoever suggesting when or how she learned of 3M's alleged fraudulent concealment. (*See generally* French PAC.) Without these essential details, Plaintiffs have not pled fraudulent concealment with the requisite particularity. *See Summerhill*, 637 F.3d at 880-81.

Moreover, the allegations in the PACs are insufficient as a matter of law to demonstrate fraudulent concealment. Plaintiffs make essentially the same allegations, accusing 3M of knowing and failing to warn against certain alleged

risks associated with the Bair Hugger system and concealing these risks through certain "misrepresentations to the public, the medical community, and the FDA." (*See* French PAC ¶¶ 144, 125-69; Stahlnecker PAC ¶¶ 138, 119-65.) Plaintiffs both make similar allegations that 3M's alleged affirmative acts prevented Plaintiffs, even in the exercise of due diligence, from discovering the facts necessary to file suit within the applicable statute of limitations period. (French PAC ¶ 168; Stahlnecker PAC ¶¶ 162-64.) But neither Plaintiff makes specific allegations demonstrating: (1) that any particular statement was directed to or heard by Plaintiffs or their medical providers, including the who, what, where, when, and how of any such statement; (2) that 3M knew of Plaintiffs' existence, their injuries, or that a Bair Hugger system was used in their individual surgeries; (3) that 3M took any specific action designed to deceive any particular Plaintiff or their particular medical providers; (4) or how specifically 3M's statements prevented Plaintiffs from timely filing their claims. Such specific details are essential to pleading fraudulent concealment, and without them, Plaintiffs have not established that fraudulent concealment applies to toll their claims. *See, e.g.*, *Chafin*, 301 Neb. at 101, 917 N.W.2d at 826 ("amended complaint [that] simply does not tell us the who, what, when, where, and how" is insufficient to toll the statute of limitations); *Oltman v. Parde*, 32 Neb. App. 725, 741, 5 N.W.3d 197, 210 (2024) ("Because the

[Plaintiffs] failed to particularly allege facts supporting fraudulent concealment, the statute of limitations did not toll.”).

In addition, in support of their allegations of fraudulent concealment, Plaintiffs rely on testimony and other statements purportedly made by 3M representatives during the pendency of this MDL, as well as publications that post-date the formation of the MDL and statements “currently” on 3M’s website. (*See, e.g.*, French PAC ¶¶ 135-38, 146, 150, 152, 156 (discussing MDL testimony); ¶¶ 140, 154 (discussing 2018 publication); ¶ 160 (discussing 2019 publication); ¶¶ 145, 147, 151 (discussing content “currently” on 3M’s website); Stahlnecker PAC ¶¶ 129-32, 140, 143, 145, 149 (discussing MDL testimony); ¶¶ 134, 147 (discussing 2018 publication); ¶ 153 (discussing 2019 publication); ¶¶ 139, 142, 144 (discussing statements “currently” on 3M’s website). These allegations are irrelevant because the formation of the MDL in December 2015 effectively terminated the possibility that 3M could have fraudulently concealed any cause of action from any plaintiff. *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a “highly publicized MDL”), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025). For French specifically, who filed her initial complaint in 2018 (and therefore must have learned of her cause of action

sometime before that), these alleged statements come too late to constitute fraudulent concealment.

For all of these reasons, Plaintiffs fail to adequately plead fraudulent concealment in their PACs. As a result, fraudulent concealment does not operate to save their untimely claims, and the proposed amendments would be futile. The Court should therefore deny Plaintiffs' motions for leave to amend.

### B. Any Alleged Tolling of the Statute of Limitations Ended When Plaintiffs Were First Diagnosed With PJIs.

Under Nebraska law, even where the fraudulent concealment doctrine applies to toll the statute of limitations, the "statute of limitations will begin to run from the time the right of action is discovered or by the exercise of ordinary diligence might have been discovered." *Muller v. Thaut*, 230 Neb. 244, 256–57, 430 N.W.2d 884, 892 (1988) (quoting 51 Am. Jur. 2d Limitation of Actions § 147 at 717–19 (1970)). Once a plaintiff "kn[ows] facts that could have reasonably led to the discovery of his [or her] cause of action," he or she "cannot rely on the doctrine of fraudulent concealment." *Mandolfo v. Mandolfo*, 281 Neb. 443, 452–53, 796 N.W.2d 603, 612 (2011); *see also Gering-Fort Laramie Irr. Dist. v. Baker*, 259 Neb. 840, 849, 612 N.W.2d 897, 904 (2000) (fraudulent concealment does not apply where plaintiff "could reasonably have learned of its cause of action within the limitations period").

This Court has already concluded in *Pelican*, *Jones*, and *Skinner* that the onset of a plaintiff's infection is sufficient to put a plaintiff on inquiry notice to discover their cause of action. In *Pelican*, for example, the Court applied Louisiana law and found that the statute of limitations began to run after the first of the plaintiff's revision surgeries, noting that plaintiff "could have requested and reviewed his medical records at any time after he developed a [PJI] and underwent, in June 2016, the first of five revision surgeries." *Pelican*, No. 23-cv-1818, Dkt. 136 at 5; *see also Jones v. 3M Company*, et al., No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (reaching the same conclusion). In *Skinner*, the Court applied Iowa law, concluding that the statute of limitations began to run upon diagnosis of the infection, reasoning that the plaintiff was on inquiry notice because "[a]t any time after he was diagnosed with a [PJI] in March 2012, [Skinner] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers." *Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 at 6-7 (Sept. 12, 2025).

The same reasoning applies here with respect to fraudulent concealment. At the time Plaintiffs were first diagnosed with a PJI, they could have discovered their causes of action through reasonable diligence. Specifically, they could have requested their medical records and obtained medical and legal assistance to evaluate the cause of their infections. French was first

diagnosed with an infection in May 2011 and she underwent several additional procedures that year. (French PAC ¶¶ 35-40.) Stahlnecker was first treated for his infection in December 2018. (Stahlnecker PAC ¶ 32.) Nevertheless, French waited nearly seven years to file her initial complaint, and Stahlnecker waited nearly six and a half years. Plaintiffs have not alleged facts to establish that they exercised due diligence. Nor do they explain how any alleged fraudulent concealment prevented them from timely filing their complaints. Any tolling based on fraudulent concealment ended when Plaintiffs were diagnosed with their infections. For each Plaintiff, that occurred well outside the limitations period. Plaintiffs' claims are untimely as a matter of law, and any attempt to amend their complaints would be futile.

## CONCLUSION

For the foregoing reasons and those outlined in 3M's Motion for Judgment on the Pleadings, French's, Bures's, and Stahlnecker's claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted as to Plaintiff Betty French, Plaintiff Terrance Bures, and Plaintiff Steven Stahlnecker. In addition, French's and Stahlnecker's Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: February 12, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***